[No. 25834. Department Two. December 9, 1935.]

LEONA KING, *a Minor, by C. E. King, her Guardian ad Litem, et al., Respondents,* v. J. A. CANN *et al., Appellants.*[1]

*Henderson & McBee,* for appellants.

*A. H. Ward,* for respondents.

[1]Reported in 52 P. (2d) 900.

HOLCOMB, J.—This appeal is from a judgment against appellants in an action for personal injuries, tried to a jury.

Leona King, a girl sixteen years of age, by her father as guardian *ad litem,* sued to recover for personal damages in the sum of $32,500 and $236.75 for hospital and medical expenses.

Appellants J. A. Cann and wife are the parents of Joseph Cann. On the evening of the accident, appellant Joseph Cann, nineteen years of age, his friend Dean Holt, eighteen years of age, and Holt's stepbrother, Kenneth Watkins, aged twenty years, by appointment, met Wilma Sheets, fifteen years of age, and Louella Smith, aged seventeen years, at a tavern in Mount Vernon, and took them in his father's automobile to a dance at Big Lake, Washington. After the dance, while they were preparing to go home, three other passengers, all of whom lived in Sedro Woolley, apparently upon the invitation of Miss Smith, got into the car to be taken home. Young Cann was reluctant to overload the car to take them to Sedro Woolley, but as he had permission from his father to use the car until four or four-thirty a. m., and it was then only a little after one a. m., he finally consented to take them.

When they started out from Big Lake, Joseph Cann asked Dean Holt to get in the driver's seat, saying he was tired from five hundred miles of driving that week and would sit in the back seat. Immediately upon leaving the dance hall, some of the persons in the car objected to Holt's manner of driving, as he almost had a collision with another car from the rear and showed some evidence of incompetence. Although the evidence was somewhat in dispute upon that question, from testimony which the jury had the

undoubted right to believe, Holt showed the utmost incompetence or negligence while driving.

After the car, with its overload of eight passengers, had been driven on the pavement between Mount Vernon and Sedro Woolley, Holt crowded an approaching car off the highway in which Leona King was riding as a guest with her cousin, Miss Purcell, and one Schultz. Schultz's car was struck after he had driven it off on the grass shoulder on his right side of the pavement and the car rolled down a perpendicular distance of twenty feet, coming to rest across the body of Miss King, seriously and permanently injuring her for life, which is not questioned here. The jury allowed her $4,500.

There was some testimony on the part of the Canns that they had forbidden Joseph to allow other young men to drive the car when he had it out for pleasure. There was also some testimony to the effect that Mrs. Cann had told young Holt that she "would prefer that he did not drive the car," giving no reason, but he was afflicted with cross-eyes, as he admitted and showed at the trial, which might have been her reason.

Several of appellants' assignments of error are based upon the giving by the trial court of instructions based upon the "family car use doctrine." Particular complaint is made of instructions numbered 14, 16, 17 and 18. It is admitted that they were paraphrased from our decision in *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59.

Appellants do not criticize the family car use doctrine, as established in this state, but contend that parents are not liable at all events, or under all circumstances, for the negligence of a son while driving the family automobile, and contend that this case

comes within the rules stated in *Warren v. Norguard,* 103 Wash. 284, 174 Pac. 7; *Hager v. Lenzi,* 152 Wash. 611, 278 Pac. 673, and *Schnebly v. Bryson,* 158 Wash. 250, 290 Pac. 849.

We have never intentionally departed from the rule first stated in *Birch v. Abercrombie, supra,* where Ellis, J., reviewed a great many authorities, discarded some and accepted others, and adopted the rule as to the "family purpose car," which has since been in effect in this state. Among other things, it was there said:

"It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent."

That decision was based, of course, upon the principle of agency and *respondeat superior.*

In the *Warren* case, *supra,* the recovery against the parents was denied because in that case the facts showed there was no relationship of agent or servant. The automobile was not being driven on any business or for the pleasure of the owners of the car or the family.

The *Hager* case, *supra,* was also upon quite different facts and circumstances, for it appeared that the evidence conclusively showed there that the automobile had been stolen by a young son of the family and an associate of his. Hence, it could not be said that it was being used for family pleasure or business.

In the *Schnebly* case, *supra,* recovery against the parents was denied, although it was declared to be a family purpose car, because, after the purpose for which the use of it had been obtained by a young

daughter and her friend, it was used for another purpose deviating from that for which it was originally permitted and intended by the daughter and friend.

In the instant case, the only restriction other than that asserted by appellants that young Cann was not authorized to let other young men drive the car was that he should return the car at least by four or four-thirty a. m. "in time for milking." Although the parents knew that the intention was to go to Big Lake to a dance, they also knew that the dance would be over by one a. m. There was no restriction as to what the young people were to do with the car thereafter, except that they must return it by four or four-thirty a. m. Consequently, the intended trip to Sedro Woolley could not be considered a deviation from the strict purpose permitted by the parents when the car was taken, as was true in the *Schnebly* case, *supra*.

To the same effect as the *Birch* case, *supra*, are: *Hanson v. Eilers*, 164 Wash. 185, 2 P. (2d) 719; *Hart v. Hogan*, 173 Wash. 598, 24 P. (2d) 99; *Robinson v. Ebert*, 180 Wash. 387, 39 P. (2d) 992; *Ulman v. Lindeman*, 44 N. D. 36, 176 N. W. 25, 10 A. L. R. 1440; *Thixton v. Palmer*, 210 Ky. 838, 276 S. W. 971, 44 A. L. R. 1379; *Grant v. Knepper*, 245 N. Y. 158, 156 N. E. 650, 54 A. L. R. 845; *Marchand v. Russell*, 257 Mich. 96, 241 N. W. 209, and *Plasch v. Fass*, 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446. See, also, 18 R. C. L. 797-798; and 2 C. J. 848-849.

See, also, annotations following the above citations in 10 A. L. R., 44 A. L. R., and 54 A. L. R., *supra*.

Of course, there are abundant cases to the contrary, but they are contrary to the rule established in this state and the states above mentioned.

As to the distinguishing fact between this case and others that have been before us in the fact that young Cann had been instructed not to let others drive and

young Holt had been requested (in a very mild manner) not to drive the car, that does not relieve the parents as owners of the car from liability.

When a member of the family has permission to use the car from the parents, as owners, in so unrestricted a manner as in the instant case, they must be held liable under the principle of agency, or *respondeat superior*, even though the member of the family turned the driving of the car over to another who proved incompetent or negligent. In so doing the substitute was a mere instrument or agent—a longer arm which the servant or agent wields or controls. *Ulman v. Lindeman, supra*. That principle has been approved by the court of appeals in New York in *Grant v. Knepper, supra*, opinion by Cardozo, J., and by the supreme court of North Carolina in *Goss v. Williams*, 196 N. C. 213, 145 S. E. 169; in *Gates v. Daley*, 54 Cal. App. 654, 202 Pac. 467; *Hendler Creamery Co. v. Miller*, 153 Md. 264, 138 Atl. 1; and in *Marchand v. Russell, supra*, by the supreme court of Michigan.

The instructions given and refused were in accord with the principles above enunciated.

The jury were correctly instructed upon the matters of gross negligence on the part of the driver of the car in which Miss King was a guest and any possible contributory negligence of her own.

One other error claimed by appellants is based upon a statement in the evidence of young Holt to the effect that he had talked with persons whom he thought were claim adjusters but afterwards found they were lawyers. The statement he made was volunteered entirely by him, not in answer to any direct or cross-question on the part of counsel for respondents, and cannot be made the basis of error on the part

560

of counsel for appellants. *Gaskill v. Amadon,* 179 Wash. 375, 38 P. (2d) 229 (not cited by respondents).

We find no reversible error in the record, and the judgment is affirmed.

MAIN, BEALS, BLAKE, and TOLMAN, JJ., concur.